IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRITTNEY FELDER** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 18-3405** |
| **MGM NATIONAL HARBOR, LLC** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff Brittney Felder, *pro se*, has sued MGM National Harbor, LLC ("National Harbor") and fifty unnamed defendants in connection with her employment at National Harbor and the SJP Boutique, a high-end retailer located within the National Harbor complex. Felder brings claims for race, sex, and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981. She also brings various claims for relief under state law and at common law.

National Harbor has moved to dismiss. (ECF No. 6). Felder has moved to remand (ECF No. 11). For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant's Motion to Dismiss, with leave for Felder to file an Amended Complaint.

### I. FACTUAL BACKGROUND

In August 2017, Felder began working at National Harbor as both Assistant Manager of Retail and the Store Manager of SJP Boutique. ECF No. 1, Ex. A ("Complaint") at 5. Felder was recruited to work at National Harbor by SJP Liaison Whitney Wilburn and National Harbor

1

Director of Retail Lisa Jones. *Id.* During the recruiting process, Felder says that Jones told her "people work here for a long time," suggesting Felder would have opportunities for career advancement at National Harbor. *Id.* Felder says that at no point during the hiring process did any National Harbor employee mention that her employment was subject to a ninety-day probationary period. *Id.* at 12. Once Felder began working at National Harbor, Jones became her supervisor. *Id.* at 6.

Felder initially received positive feedback from Jones's supervisor Patrick Fisher and Wilburn while Jones was on a leave of absence. *Id.* Felder also began planning an event at the store featuring SJP's celebrity founder, Sarah Jessica Parker, and other high-stakes guests set to take place on September 20, 2017. *Id.* at 7.

After Jones returned from her leave of absence, she and Wilburn allegedly began criticizing Felder constantly. *Id.* During a meeting among Jones, Wilburn, and several other employees on September 11, 2017, Felder says that Wilburn called her a "dictator." *Id.* at 8. Later that day, Felder learned from another employee that Jones characterized the interaction as a mutual argument between Felder and Wilburn. *Id.* at 8–9.

On September 14, 2017, Felder discovered someone had modified several window and store displays that she had set up at the SJP Boutique. *Id.* at 8. Felder subsequently complained to Fisher about the treatment she had been receiving from Jones and Wilburn. *Id.* at 9. At a meeting later that same day, Felder says that Jones ignored her and admitted that she was angry Felder had reported Jones to Fisher. *Id.* Felder also says that Jones described her as combative and insolent. *Id.* at 18. Felder also says that Jones referred to her as "the queen," which Felder alleges is a derogatory term used between African-Americans to refer to different skin colors. *Id.* at 10 n.3. Subsequently, Felder says that Wilburn and Jones delegated some of her responsibilities to other

2

less qualified Assistant Managers, one of whom was "a White/Caucasian female," the other a "dark skin African American male," who were also subject to disciplinary action. *Id.* at 10, 15.

On September 20, 2017, the day of the SJP event, Felder alleges that Jones modified Felder's store designs without consulting her. *Id.* at 11. Felder says she felt extremely distressed, and begged Jones to stop her modifications, to which Jones responded by calling for National Harbor security. *Id.* Felder subsequently called Fisher, who she says urged her to comply with Jones's instructions. *Id.* Security personnel arrived and removed Felder from the building. *Id.* Later, one of Felder's coworkers told her that Jones had recorded the episode and shared the video with other employees. *Id.* at 12.

The next day, on September 21, 2017, Felder returned to National Harbor to meet with Jones. *Id.* At the meeting, Jones terminated Felder's employment, explaining that Felder's employment fell within a ninety-day probationary period. *Id.* Felder refused to sign the separation agreement that she says Jones presented her. *Id.*

Felder filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received her right to sue letter on June 9, 2018. Felder subsequently filed suit in the Circuit Court for Prince George's County, Maryland on September 7, 2018 against National Harbor and fifty unnamed defendants. National Harbor removed the case to this Court on November 2, 2018 and, on November 9, 2018, moved to dismiss Felder's Complaint for failure to state a claim. ECF No. 6. Felder filed her Opposition on November 30, 2018, ECF No. 10, and National Harbor filed its Reply on December 13, 2018. ECF No. 14. Felder moved for leave to file a Surreply on January 29, 2019. ECF No. 17. The Court granted Felder's motion, ECF No. 18, and accepted her Surreply on March 5, 2019. ECF No. 19.

Felder also filed a Motion to Remand on November 30, 2018. ECF No. 11. National Harbor filed its Opposition on 13, 2018. ECF No. 13. Felder filed her Reply on January 11, 2019. ECF No. 15.

## II. ANALYSIS

### A. *Plaintiff's Motion to Remand*

Felder has moved to remand on the grounds that (1) the Notice of Removal is invalid because it contains a misspelling of her name, (2) state courts have concurrent jurisdiction to hear federal claims, and (3) absent removal, she will be required to litigate her state and federal claims separately. National Harbor contends that removal and subject matter jurisdiction are proper. The Court agrees with National Harbor.

District courts have supplemental jurisdiction over claims that are derived from a "nucleus of operative fact" common to additional claims over which the court has original jurisdiction. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir. 1998); *see also* 28 U.S.C. § 1367(a). The Court has original jurisdiction over Felder's discrimination claims because they arise under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Because all of Felder's claims arise from incidents that allegedly occurred during her period of employment at National Harbor, the Court may exercise supplemental jurisdiction over the remaining state law claims in her Complaint. Further, National Harbor timely removed the case to federal court on November 2, 2018, within thirty days of receiving service of a copy of Felder's Complaint and Summons on October 4, 2018.

Felder's arguments for remand lack merit. Her name is misspelled only once in the Notice of Removal—on the civil cover sheet, not the actual notice—and there is no indication that she did not receive a copy of the Notice. *See Khepera-Bey v. Santander Consumer USA, Inc.*, Civil No.

4

WDQ-11-1269, 2012 WL 1965444, at *6 (D. Md. May 30, 2012) (holding that a misspelling alone did not invalidate service of process when a defendant received actual notice and was not prejudiced). And although Felder is correct that state courts may exercise concurrent jurisdiction over federal claims, that alone does not preclude removal to federal court if the conditions for removal are met. *See, e.g.*, *Bahari v. Countrywide Home Loans*, Civil No. CCB-05-2085, 2005 WL 3505604, at *3 (D. Md. Dec. 16, 2005) (noting the Fourth Circuit has long held concurrent jurisdiction does not bar removal in the absence of express provisions by Congress).

Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

*B. Defendant's Motion to Dismiss*

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards" that require a plaintiff to submit only a "short and plain statement of the claim showing that [she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). The plaintiff's statement must contain facts sufficient to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The plausibility standard requires that the plaintiff plead facts sufficient to show by "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept the plaintiff's factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments" do not satisfy the plausibility pleading standard. *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The complaint must contain factual allegations sufficient to

apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

Federal Rule of Civil Procedure 9(b) requires that a party "alleging fraud or mistake" must plead "with particularity the circumstances constituting fraud or mistake." The certain "circumstances" of a fraud or mistake claim that must be plead with particularity are the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted). Lack of compliance with the heightened pleading standard for claims of "fraud or mistake" is grounds for dismissal for failure to state a claim. *See Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015) (citing *Harrison*, 176 F.3d at 783 n.5).

Federal courts have an "obligation to liberally construe a *pro se* [c]omplaint" and may consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss. *See Rush v. Am. Home Mortg., Inc.,* 2009 U.S. Dist LEXIS 112530, at *11-12 (D. Md. Dec. 3, 2009). However, this requirement "does not transform the court into an advocate," *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted), and "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)). Although the facts alleged in a *pro se* plaintiff's complaint must ordinarily be taken as true, mere conclusory statements "are

not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679)) (internal quotation marks omitted).

### 1. Tortious Misrepresentation / Fraud

Felder argues National Harbor committed fraud by (1) failing to disclose that she would be subject to a ninety-day probationary period upon her hiring and (2) promising that she could have a lengthy career working at National Harbor. National Harbor counters that Felder has failed to plead fraud with particularity required by Federal Rule of Civil Procedure 9(b) and that, as an at-will employee, Felder could have been fired at any time without suffering a colorable injury. Again, the Court agrees with National Harbor.

In Maryland, a claim for fraudulent misrepresentation requires:

> (1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation.

*Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 537 (Md. 1982).

Felder's claim fails because promises about potential future employment opportunities, or general promissory statements, are not actionable as fraud, unless the employer did not intend to perform on those promises. *See Miller v. Fairchild Industries, Inc.*, 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993) (citation omitted). Since Felder has alleged no facts to suggest Jones, or anyone else at National Harbor, did not intend to perform on purported promises of future career opportunities for Felder, her Complaint as currently construed does not allege any fraudulent

actions by Defendant. Until these factual deficiencies are corrected, Felder has failed to plead a plausible claim for tortious misrepresentation or fraud.[1]

2. Breach of Contract

Felder next argues a job description for her position that she accessed through National Harbor's website was an offer by National Harbor, and her acceptance of the position formed a binding contract. Felder also alleges that Jones breached this contract by delegating some of her tasks to other employees. Complaint at 17.[2] National Harbor counters that the job posting explicitly stated it was not a binding agreement and, accordingly, no contract was formed when Felder accepted the job. Yet again, the Court agrees with National Harbor.

A claim for breach of contract in Maryland requires both the existence of a contract and a breach. *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 440 (Md. 2010) (internal quotation marks and citation omitted); *see also Martin v. Boeing Co.*, Civil No. 2:16-CV-02797-DCN, 2016 WL 7239914, at *4 (D. S.C. Dec. 15, 2016) (holding that a job description posted by an employer did not obligate the employer to limit an employee's responsibilities to those named in the job description). The posting on National Harbor's website for the job Felder accepted stated that "[th]is job description in no way states or implies that these are the only duties to be performed by the employee in this position." ECF No. 1, Ex. E. Accordingly, the publicly-posted description of Felder's job did not compel National Harbor to assign Felder only those tasks named in the description, and no contract was formed. *See RRC*, 994 A.2d at 443 (holding that a contract

---

[1] Felder also asserts that National Harbor violated Maryland's Uniform Commercial Code codified as Md. Code. Ann., Com. Law §§ 1-304 and 8-501(1). These provisions do not apply in the absence of a contract for the sale of goods.
[2] Felder contends National Harbor violated several provisions of Maryland's Uniform Commercial Code codified as Md. Code Ann., Com. Law §§ 2-206, 22-701, and 1-304. Because these provisions only apply to contracts for the sale of goods, her claims will be dismissed.

8

requires a showing of intent to be bound).³ Until Felder's Complaint is amended to plead the required elements, her breach of contract claim is deficient.

### 3. Defamation/Slander⁴

Felder alleges that she was defamed six times by National Harbor employees: (1) Jones told other employees that Felder was "going at it" in a meeting with Wilburn; (2) Jones told Felder that she "scared her" in a meeting; (3) Jones told other employees that Felder was combative and insolent; (4) Wilburn called Felder a "dictator;" (5) Jones told National Harbor security personnel that Felder was behaving erratically; and (6) Jones shared a video of Felder's removal from the building with other National Harbor employees. National Harbor argues none of these statements were defamatory because they are either substantially correct, hyperbole, or protected by a qualified privilege. Once again, the Court agrees with National Harbor.

To establish a cause of action for defamation in Maryland, a plaintiff must allege "(1) defamatory communication to a third party, (2) that the communication was false, (3) that the Defendant intended to communicate a false statement, and (4) that the Plaintiff suffered damages." *Carter v. Morgan*, 34 F. App'x 427, 428 (4th Cir. 2002) (citation omitted). For the purposes of the first element of a defamation claim, a defamatory statement is "one that tends to expose a person to public scorn." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (citation omitted). For the purpose of the second element, a false statement is one that is "not substantially correct." *Id.* Plaintiff bears the burden of proving that an allegedly defamatory statement is false. *Id.* True statements are not actionable. *Abadian v. Lee*, 117 F. Supp. 2d 481, 487 (D. Md. 2000) (citation omitted).

---

³ Felder makes clear in her Surreply that she does not claim National Harbor breached a contract by terminating her employment, and concedes she was an at will employee. *See* ECF No. 19.
⁴ Under Maryland law, the elements of slander and defamation are the same. *Lake Shore Investors v. Rite Aid Corp.*, 509 A.2d 727, 731 (Md. Ct. Spec. App. 1986).

Qualified privilege protects those statements made in the employment context from being considered defamatory. *Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) (internal quotation marks and citations omitted). However, a plaintiff can overcome the privilege by showing actual malice or that the statement contained irrelevant information. *Id.* at 332.

None of the six statements by National Harbor employees that Felder cites are defamatory. The first statement is essentially correct: Felder admits that she argued with Wilburn during the meeting in question. Complaint at 8. The second and third statements are likely privileged because they concerned Felder's job performance, and Felder has not sufficiently alleged that Jones spoke with actual malice. *See Rabinowitz v. Oates*, 955 F. Supp. 485, 488-90 (D. Md. 1996) (holding statements that an employee's work was "junk" fell within a qualified privilege because they concerned the employee's work product and performance). The fourth statement is not defamatory because Felder has failed to show that Wilburn intended to communicate a false statement by calling her a "dictator." The fifth statement is also not defamatory because it is substantially correct: Felder admitted that she was upset at the time Jones called National Harbor security on the day of the event that Felder had planned. Complaint at 11. Finally, the sixth statement, the video of Felder as she interacted with National Harbor security, would also likely be considered "substantially correct," and therefore not defamatory. Until Felder files an Amended Complaint pleading facts sufficient to support all elements of common law defamation, she has not pled a plausible defamation claim.

4. <u>Negligent Retention/Supervision</u>

Felder contends that National Harbor negligently supervised Jones by failing to prevent Jones from frequently defaming her. National Harbor argues that Felder's claim for negligent retention/supervision should be dismissed because (1) Felder has failed to plead a colorable

common law cause of action, and (2) National Harbor did not have actual or constructive notice of Jones's potential to harm Felder by defamation. Again, the Court agrees with National Harbor.

Maryland law requires that a plaintiff satisfy five elements in a claim of negligent supervision and retention:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring[, supervising] or retaining the employee as the proximate cause of plaintiff's injuries.

*Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 17 A.3d 155, 165 (Md. 2011).

While Felder has adequately demonstrated that National Harbor employed Jones, she has not sufficiently alleged that National Harbor had actual or constructive notice of Jones's potential to defame her. Although Felder had previously complained to her supervisor, Fisher, about Jones's conduct, she complained that Jones had modified her store display designs, not that Jones had regularly defamed her. Complaint at 9. And, even if National Harbor had constructive knowledge of Jones's allegedly defamatory statements, Felder has failed to show how those statements injured her because she has failed to plead a colorable defamation claim. *See* Section II.B.3, *supra*. Until the Complaint is augmented with sufficient facts, Felder will not have pled a plausible claim of negligent supervision and retention.

5. <u>Intentional Infliction of Emotional Distress</u>

Felder alleges that she suffered emotional distress as a result of Jones calling National Harbor security on her. National Harbor responds that requesting security did not constitute the "outrageous conduct" necessary to sustain a claim for intentional infliction of emotional distress. The Court agrees with National Harbor.

A colorable claim for intentional infliction of emotional distress requires "1) intentional and reckless conduct; 2) extreme and outrageous conduct; 3) a causal connection between the wrongful conduct and the emotional distress; and 4) emotional distress of a severe nature." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). In Maryland, "the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992) (citation omitted). Of these elements, liability often hinges on whether conduct is truly outrageous, *Id.* (citation omitted), or a "complete denial of the plaintiff's dignity as a person." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. 1986)

Felder has failed to demonstrate that Jones calling security on her is "outrageous conduct." *See Hamilton*, 502 A.2d at 1064 (holding that insensitive acts of poor judgment are insufficient to constitute outrageous conduct). Further, Felder's alleged "loss of financial stability [and] peace of mind," Complaint at 23, does not rise to the level of "emotional distress of a severe nature." *Cf. Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 467 (D. Md. 2002) (holding that plaintiff who had been told to consult a doctor did not suffer sufficient anguish to state a claim for intentional infliction of emotional distress). Until she has alleged facts sufficient to satisfy all elements of intentional infliction of emotional distress, Felder has not pled a plausible claim.

### 6. Race, Color, and Sex Discrimination Claims

Felder has alleged that she suffered race, skin color, and sex discrimination, as well as discriminatory termination, during her employment with and as a result of her termination from National Harbor in violation of federal and state law. Complaint at 23–25. It is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, [or] sex." 42

U.S.C. § 2000e-2(a)(1) ("Title VII"). The Fourth Circuit requires that Title VII discrimination claims "allege facts to satisfy the elements of a cause of action created by that statute," not merely conclusions of discrimination. *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).[5] Critically, Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). 42 U.S.C. § 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Fourth Circuit has interpreted § 1981 to prohibit race-based employment discrimination. *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018). However, the statute cannot form the basis of a cause of action for sex discrimination. *Runyon v. McCrary*, 427 U.S. 160, 167 (1976).

### a. Timeliness of the Discrimination Claims

Before a plaintiff has standing to bring an action in court pursuant to Title VII, she must exhaust her administrative remedies by filing a complaint with the EEOC, *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000), and file suit within ninety days of receiving notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1). The Fourth Circuit applies an equitable tolling analysis to the ninety-day filing requirement. *Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 861. (D. Md. 2015) (citation omitted).

National Harbor urges the Court to dismiss Felder's Title VII claims because they are untimely. National Harbor presumes that Felder received her right to sue letter three days on June

---

[5] Felder has asserted claims pursuant to Maryland's Fair Employment Practices Act, an analog to Title VII. *Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841, 849 (D. Md. 2015). The analysis presented here consequently applies to both.

13

7, 2018, i.e., three days after the letter's postmark. *See* ECF No. 6 at 7. Accordingly, National Harbor contends that Felder's discrimination claims are untimely because she filed her Complaint more than ninety days after receiving her right to sue letter. Felder responds that she received her right to sue letter on June 9, 2018 and filed her Complaint in a timely manner on September 7, 2018. Complaint at 3. At this stage in the case, the Court will accept Felder's contentions and consider her Complaint to have been timely filed. *See Mackin v. Charles Schwab & Co.*, Civil No. CV DKC 16-3923, 2017 WL 4547423, at *2 (D. Md. Oct. 12, 2017) (accepting plaintiff's chronology of receipt of her right to sue letter and considering her complaint to have been timely filed).

### b. Disparate Treatment

Felder contends Jones treated her less favorably by delegating her duties to others because of her race, sex, and skin color. National Harbor responds that Felder has not pled colorable discrimination claims because she has not alleged that any similarly situated employees were treated differently than she. Again, the Court agrees with National Harbor.

A discrimination claim based on disparate treatment requires "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Scott v. Health Net Federal Services, LLC*, 463 F. App'x 206, 208 (4th Cir. 2012). A consequential change in employment status can be considered an adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). Importantly, "liability hinges on whether the protected trait motivated the employer to take the adverse action." *Dobson v. Harnden Grp. LLC*, Civil No. JKB-18-3624, 2019 WL 1242527, at *5 (D. Md. Mar. 18, 2019).

While Felder is indisputably a member of a protected class, she has failed to state any valid discrimination claims. The delegation of duties to other employees does not likely constitute an adverse employment action. *Cf. Prince-Garrison v. Maryland Dept. of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (holding that a failure to provide office supplies, reprimands for insubordination, and meetings with supervisors are not adverse employment actions). Additionally, the one instance of Jones calling Felder "queen" does not likely suffice to show a motivation for disparate treatment based on skin color, absent any comparison to other similarly situated National Harbor employees outside the protected class, and Felder has alleged no other evidence of sex, or race discrimination in her Complaint or attached exhibits. *See Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 191 (4th Cir. 2010) (dismissing a complaint that did not provide sufficient facts suggesting discriminatory motive above the speculative level). Until she pleads sufficient facts to support all required elements, Felder's discrimination claims are deficient.

### c. Wrongful Termination

Felder has pled claims for wrongful termination pursuant to Title VII and 42 § U.S.C. 1981. National Harbor argues that the Fourth Circuit no longer recognizes a cause of action for wrongful termination pursuant to § 1981 and that Felder has failed to allege a discriminatory motive on the part of National Harbor. While National Harbor misstates the Fourth Circuit's position on wrongful termination pursuant to § 1981, it is correct that Felder's wrongful termination claim as currently pled is not plausible.

A cause of action for discriminatory termination pursuant to Title VII requires a plaintiff to allege that "(1) she is a member of a protected class; (2) she was qualified for her job and performing at a satisfactory level; (3) she was terminated; and (4) she was replaced by a similarly

15

situated applicant outside her protected class." *Purchase v. Astrue*, 324 F. App'x 239, 241 (4th Cir. 2009) (citation omitted). A *prima facie* case of wrongful termination pursuant to 42 U.S.C. § 1981 demands "(1) membership in a protected class; (2) an adverse employment action; (3) performance of job duties at a level that met the employer's legitimate expectations; and (4) that the position remained open or was filled by similarly qualified applicants outside the protected class. *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 714 (D. Md. 2013). In the case of both Title VII and § 1981, a plaintiff must plausibly allege that she was terminated because of her protected status. *Ramos v. Molina Healthcare, Inc.*, 603 F. App'x 173, 178 (4th Cir. 2015).

National Harbor is incorrect that the Fourth Circuit no longer recognizes this cause of action pursuant to § 1981. *See Hawkins v. Pepsico Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (explaining the Fourth Circuit's position that because an at will employment relationship is contractual in nature, at will plaintiffs can maintain a cause of action for wrongful termination pursuant to § 1981). But, regardless, Felder's claims should still be dismissed. Felder alleged in her EEOC charge of discrimination that National Harbor hired an African American male to assume her role. ECF No. 1, Ex. B. Thus, her former position was not filled by an individual outside her protected class, and she has failed to plausibly plead all of the required elements of a wrongful termination claim. Until her Complaint is amended to plead sufficient facts, Felder's wrongful termination claim is deficient.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Felder's Motion to Remand (ECF No. 11), and **GRANTS WITHOUT PREJUDICE** National Harbor's Motion to Dismiss (ECF No. 6).[6] Felder will have thirty (30) days to file an Amended Complaint remedying the factual deficiencies discussed throughout. National Harbor may file a second Motion to Dismiss and Felder may respond in the ordinary course.

A separate Order will **ISSUE**.

                                                  /s/
                         **PETER J. MESSITTE**
                **UNITED STATES DISTRICT JUDGE**

**August 15, 2019**

---

[6] While the Fourth Circuit "recognize[s] the necessity of allowing John Doe suits in the federal courts, . . . [it is] not unaware of the right of the district court to manage its docket and the danger of permitting suits with unnamed parties to remain on the docket unprosecuted." *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982). Felder has sued fifty unnamed defendants. It is unclear how these individuals relate to the suit, and Felder does not bring claims against them. Thus, the Court will dismiss them as defendants.